UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DR. ROBIN GAY, DR. MARIA           )
ZALDUENDO, and DR. DAVID           )
YUDKOWSKY,                         )
                                   )
            Plaintiffs,            )
                                   )         No. 18 C 7389
      v.                           )
                                   )         Judge Sara L. Ellis
CHICAGOLAND SMILE GROUP and        )
DOWNTOWN DENTAL RIVER NORTH,       )
LLC,                               )
                                   )
            Defendants.            )

## OPINION AND ORDER

Plaintiffs Dr. Robin Gay, Dr. Maria Zalduendo, and Dr. David Yudkowsky are dentists over the age of forty who previously practiced at Defendant Downtown Dental River North ("DDRN"), managed by Defendant Chicagoland Smile Group. Following the termination of their employment at DDRN, Plaintiffs filed this action, claiming that Defendants discriminated against them in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* DDRN acquired the practice that employed Plaintiffs in May 2017, and Plaintiffs allege that the discrimination occurred thereafter. Gay and Zalduendo also claim that Defendants breached their employment contracts and violated the Illinois Wage Payment and Collection Act ("IWPCA"), 820 Ill. Comp. Stat. § 115/1 *et seq.* Gay and Zalduendo also seek an accounting. Defendants have moved for summary judgment on Plaintiffs' complaint and have also moved to bar certain evidence of damages. Because Gay's claims are untimely and Zalduendo and Yudkowsky have not demonstrated a genuine issue of material fact as to whether their age caused their terminations, the Court grants summary judgment to Defendants on Plaintiffs'

ADEA claims.  The Court additionally grants summary judgment to Defendants on Gay and

Zalduendo's breach of contract and IWPCA claims because they have failed to provide any

reasonable basis for the computation of their damages.  Finally, the Court grants summary

judgment to Defendants on Gay and Zalduendo's accounting claims because they have failed to

establish a genuine issue of material fact as to the elements of an accounting under Illinois law.

The Court denies Defendants' motion to bar as moot.

## BACKGROUND[1]

According to the complaint, prior to March 13, 2014, 3D Dental Services, Limited

("Predecessor") operated dental practices at various locations including at 676 N. Michigan

Avenue, Suite 3500, Chicago, Illinois (the "Practice").  On December 22, 1998, Yudkowsky

entered into an employment agreement to provide dental services at the Practice.  Gay entered

into a contract with Predecessor to provide dental services at the Practice, as well as two other

locations, commencing July 1, 2015.  On December 31, 2014, Zalduendo entered into a contract

to perform dental services at the Practice.

In May 2017, DDRN acquired the Practice from the Predecessor.  DDRN based

Plaintiffs' compensation on collected patient billings, so a number of variables affected

Plaintiffs' compensation including, without limitation: (1) the number of patients each dentist

saw, (2) the lab costs of the services each dentist performed for each patient (with respect to Gay

and Zalduendo only); (3) the amount actually charged to the patient for the services each dentist

performed; and (4) the extent to which each patient and/or their insurer actually paid DDRN for

the services performed.

---

[1] The Court derives the facts in this section from the Joint Statement of Undisputed Material Facts, Plaintiffs' Statement of Disputed Material Facts, and Defendants' responses thereto.  The Court considers the statements and responses in Plaintiffs' Statement to the extent appropriately presented, supported, and relevant to resolution of the pending motion for summary judgment.  All facts are taken in the light most favorable to Plaintiffs, the non-movants.

## I.    Dr. Gay

Gay was fifty-eight years old when Plaintiffs filed their complaint.  Prior to March 2, 2017, Gay was the highest producing dentist in the Practice.  Following the takeover in May 2017, DDRN replaced Gay as clinical director with Roshan Parikh, one of Chicagoland Smile Group's founders, who was thirty-five or thirty-six years old at the time.  Gay had twelve years of experience as a clinical director and over 1,000 patients before DDRN removed her from that position, which she had hoped to keep.  On October 9, 2017, Gay submitted her written resignation; the effective date of her resignation was November 8, 2017.  That written resignation notice does not state that she experienced age discrimination under Defendants.  Gay testified that her objective in sending the resignation letter was to transition out of the DDRN practice.

In 2017, prior to her resignation, Gay worked at DDRN three days a week.  Instead of a fixed salary, DDRN compensated Gay under a formula that first subtracted lab costs for her Invisalign cases from the gross amount DDRN collected from patients for services Gay performed, then multiplied the resulting number by thirty-five percent, and finally subtracted half of Gay's lab costs for services (other than Invisalign) she performed.  This formula did not change in 2017.

When Gay submitted her resignation, she accepted an offer to work as the Dental Director of Howard Brown Health Center ("Howard Brown").  At that time, she also intended to accept another offer with a second employer and eventually accepted the position.  Gay had been applying for jobs outside of the Practice in February 2017, and perhaps as early as October 2016. Gay started the dental program at Howard Brown and was the only employee at the inception of that program.  Additionally, Howard Brown had no dental patients at its inception.  Pursuant to

3

her agreement with Howard Brown, Gay was to receive compensation at the rate of $100 per hour until March 31, 2018. Beginning April 1, 2018, Gay earned an annual salary of $176,000.

On August 3, 2018, Gay filed an administrative charge of discrimination; October 7, 2017 was 300 days prior to the filing of her charge. Gay did not make any complaints of age discrimination during her employment. In the charge, Gay alleged that DDRN discriminated against her in violation of the ADEA. The allegations relate to events that occurred after DDRN management took over the Practice on May 2, 2017. In the months following the takeover, there were delays in DDRN's issuance of bills to patients for services, which affected all DDRN dentists. Specifically, Gay testified that after the takeover, her "collection plummeted" and the number of patients that she saw was "greatly reduced." Doc. 69-2, Gay Dep. 50:23–51:1. Gay further testified that she was spoken to in a "rude, disrespectful way" between the takeover and October 1, 2017. Doc. 69-2, Gay Dep. 74:4–23, 77:2–21. Gay cannot identify any patient that should have been scheduled with her but was instead seen by a different DDRN dentist. Nor can Gay identify any specific instance in October 2017 when a patient should have been scheduled with her but was not. Gay did not witness anyone at DDRN make any age-related comments or slurs directed to her, and she did not personally observe anyone make age-related comments or slurs about anyone else during her employment with DDRN. Gay limited the scope of her breach of contract, accounting, and IWPCA claims to the timeframe of May 2, 2017 and thereafter.

## II.     Dr. Zalduendo

At the time that Plaintiffs filed the complaint, Zalduendo was fifty-nine years old. In 2017 and until her termination in 2018, Zalduendo worked for DDRN part-time, three or occasionally four days a week. She wanted to continue to work that schedule at the time of her

termination. Zalduendo was not paid a fixed salary. Instead, DDRN based her compensation on

a formula calculated by taking thirty-two percent of net revenue collected from patients for

services she performed and subtracting fifty percent of lab costs for services she performed. This

formula did not change in 2017 or 2018.

In the final months of 2017, DDRN developed a business strategy for re-branding and

revamping the DDRN practice. A key component of that strategy was to employ dentists who

worked a full-time schedule, working every Monday through Friday, with the potential for

expanded weekday evening and Saturday hours. DDRN management believed that such a

strategy would improve the DDRN practice because appointments on nights and weekends might

better accommodate patients' schedules. DDRN management did not think that Zalduendo

would be willing to work a full-time schedule, in which she worked every Monday through

Friday, with the potential for expanded weekday evening and Saturday hours. DDRN never

asked Zalduendo if she was willing to work a different schedule.

Another key component of DDRN's re-branding strategy was to implement "same-day

dentistry" procedures. Several dentists at DDRN, including Zalduendo, historically had a

practice of conducting approximately ninety minute comprehensive examinations and

consultations with new patients as the patient's first visit to DDRN. Such examinations

generally included x-rays and a thorough periodontal exam to create a treatment plan but did not

include a teeth cleaning. Patients would then be required to make a subsequent visit to DDRN in

order to, for instance, get their teeth cleaned, have a cavity filled, or begin treatment. Same-day

dentistry, however, involved a new patient receiving a teeth cleaning, cavity filling, or other

treatment that could be performed in the appointment window during the initial visit to the

practice. This avoided a patient scheduling and attending a second appointment for such

5

services. DDRN management believed that same-day dentistry was a better fit for patients' busy lives. DDRN management did not believe Zalduendo would be willing to consistently implement same-day dentistry procedures.

On April 18, 2018, DDRN terminated Zalduendo because it "[had] undertaken a strategic initiative to rebrand and relaunch Manus Northwestern Oral Health Center." Doc. 69-16 at 1. DDRN did not mention or refer to Zalduendo's age when DDRN communicated that it was terminating her employment. DDRN did not provide Zalduendo the contractually-mandated notice upon her termination. On September 17, 2018, Zalduendo filed an administrative charge of age discrimination; November 21, 2017 was 300 days prior to the filing of her charge. Zalduendo did not personally observe anyone make any age-related comments or slurs to her or about her or anyone else during her employment with DDRN. Zalduendo did not complain of age discrimination during her employment. Zalduendo limited the scope of her breach of contract, accounting, and IWPCA claims to the timeframe following the termination of her employment. Zalduendo testified that she was compensated properly during her employment.

## III.    Dr. Yudkowsky

At the time that Plaintiffs filed the complaint, Yudkowsky was fifty-nine years old. He worked for DDRN part-time, four days a week and wanted to continue working that schedule at the time of his termination. Rather than paying Yudkowsky a fixed salary, DDRN compensated him with thirty-one percent of net revenue collected from patients for services he provided. This compensation formula did not change in 2017 or 2018. DDRN management never asked Yudkowsky whether he would be willing to work a different schedule, although it believed that he would not be willing to work full-time. DDRN management also did not think that Yudkowsky would be willing to consistently implement same-day dentistry procedures.

Yudkowsky testified that DDRN management wanted him to stop conducting ninety minute new patient consultations during the initial new patient visit and that DDRN management instead wanted a hygienist to clean new patients' teeth during their initial visit. Yudkowsky also testified that he continued with the ninety minute new patient consultations that DDRN wanted him to cease doing.

On April 18, 2018, DDRN terminated Yudkowsky because it "[had] undertaken a strategic initiative to rebrand and relaunch Manus Northwestern Oral Health Center." Doc. 69-19 at 1. DDRN did not provide Yudkowsky the contractually-mandated notice upon his termination. When DDRN terminated Yudkowsky's employment, it did not mention or refer to his age. Yudkowsky did not personally observe anyone make any age-related comments or slurs about him or anyone else during his employment with DDRN. Yudkowsky also did not complain of age discrimination during his employment. On September 21, 2018, Yudkowsky filed an administrative charge of discrimination; November 25, 2017 was 300 days prior to the filing of his charge.

**IV.    Potential Comparators**

Gay identified Dr. Sharmi Shah as a purported comparator.  Gay and Shah did not begin working at DDRN at the same time.  When DDRN hired Shah, her compensation formula was not the same as Gay's compensation formula.  Shah's compensation formula went into effect in February 2017 and was not changed on May 2, 2017 or thereafter.  Additionally, although she did not perform Clinical Director duties at DDRN after May 2, 2017, Gay received monthly Clinical Director compensation.  Unlike Gay, Shah did not come to DDRN with an extensive base of patients.  Instead, DDRN hired Shah to treat the existing patient base.

Plaintiffs also identified Dr. Mary Grant and Dr. Lindsey Harbron as allegedly similarly situated dentists under the age of 40.  Both began working at DDRN in 2018; Harbron began in March and Grant began in April.  DDRN hired Grant and Harbron with the expectation that they would work a full-time schedule, in which they worked every Monday through Friday, with the potential for expanded weekday evening and Saturday hours.  DDRN also expected that they would consistently implement same-day dentistry procedures.  Zalduendo and Yudkowsky do not know the schedules that Grant and Harbron worked.  Nor does Zalduendo know the schedules that DDRN expected them to work.  Gay was not employed at DDRN at the same time as Grant or Harbron, never met them, and knows nothing about their compensation agreements.

DDRN compensated Grant pursuant to a formula calculated by taking thirty-two percent of net revenue collected from patients for services she performed and subtracting fifty percent of lab costs for services she performed.  DDRN compensated Harbron under a similar formula, calculated by taking thirty-three percent of net revenue collected from patients for services she performed and subtracting fifty percent of lab costs for services she performed.  Zalduendo has no knowledge of any other DDRN dentist's compensation, including Grant and Harbron.

On some occasions when DDRN allocated patients to Grant or Harbron, Yudkowsky and Zalduendo did not have availability in their schedules to see those patients. Patient scheduling can be affected by factors that include, but are not limited to, whether a dentist has an opening in his or her schedule, how long a particular patient's procedure or appointment is expected to take, and the date and time when the patient would like to be seen. Unlike Yudkowsky and Zalduendo, Grant and Harbron did not have existing patient loads when they began working at DDRN. As such, DDRN allocated patients with the intention that the total daily patient loads of Grant and Harbron would be similar to the other DDRN dentists' daily patient loads. Zalduendo and Yudkowsky do not know whether Grant and Harbron brought their own patients to DDRN when they began work. Zalduendo also does not know the actual number of new patients allocated to the DDRN dentists, nor does she know whether the volume of new patients to DDRN was increasing, decreasing, or staying the same from October 2017 through April 2018. Zalduendo does not know what other DDRN dentists' patient loads were in the timeframe of November 2017 to April 2018. Additionally, Zalduendo does not know exactly how her or Yudkowsky's respective patient loads compared to Grant's and Harbron's respective patient loads; however, Zalduendo testified that she had no reason to disagree with the assertion that her existing patient load was significantly larger than Grant's patient load when Grant began at DDRN. During the respective timeframes when the employment of Grant and Harbron overlapped with the employment of Zalduendo and Yudkowsky, the respective total patient loads Zalduendo and Yudkowsky each had were greater than the total patient loads that Grant and Harbron each had.

9

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record.  Fed. R. Civ. P. 56 & advisory committee's notes.  The party seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue for trial.  *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000).  Although a bare contention that an issue of fact exists does not create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## ANALYSIS

### I.  ADEA Claims

#### A.  Statute of Limitations

The parties first dispute whether Plaintiffs' ADEA claims are time-barred.  To bring an age discrimination claim, a plaintiff must file a charge with the EEOC within 300 days of the alleged discriminatory act.  *See Riley v. Elkhart Cmty. Sch.*, 829 F.3d 886, 890 (7th Cir. 2016) ("ADEA claims must be filed within 300 days of the alleged discriminatory act or unlawful practice." (citing 29 U.S.C. § 626(d)(1)(B))); *see also Flannery v. Recording Indus. Ass'n of*

*Am.*, 354 F.3d 632, 637 (7th Cir. 2004). Here, Gay filed her charge of discrimination on August 3, 2018, so any ADEA violation related to an incident that occurred before October 7, 2017 is time-barred. Zalduendo filed a charge of discrimination on September 17, 2018, so any ADEA violation related to an incident that occurred before November 21, 2017 is similarly time-barred. Finally, Yudkowsky filed a charge of discrimination on September 21, 2018, thus, any ADEA violation related to an incident that occurred before November 25, 2017 is time-barred.

Plaintiffs argue, however, that the continuing violation doctrine applies and the Court should view the practice of "slowly stripping existing patients away from older doctors over time" as one continuing violation. Doc. 72 at 9. The continuing violation doctrine allows a plaintiff to "obtain relief for a time-barred act of discrimination by linking it with acts that fall within the statutory limitations period." *Filipovic v. K & R Express Sys., Inc.*, 176 F.3d 390, 396 (7th Cir. 1999); *see also Dasgupta v. Univ. of Wis. Bd. of Regents*, 121 F.3d 1138, 1139 (7th Cir. 1997) ("A continuing violation is one that could not reasonably have been expected to be made the subject of a lawsuit when it first occurred because its character as a violation did not become clear until it was repeated during the limitations period."). As an initial matter, for the doctrine to apply, a plaintiff must identify acts of discrimination that occurred within the limitations period. *See Freeman v. Madison Metro. Sch. Dist.*, 231 F.3d 374, 381 (7th Cir. 2000); *see also Benjamin v. Katten Muchin & Zavis*, 10 F. App'x 346, 356 (7th Cir. 2001) ("The continuing violation theory applies only if specific acts of discrimination occurred within the limitations period.").

Looking to Gay's discrimination claims, Gay does not identify an act of discrimination that occurred within the limitations period. Plaintiffs seek to connect Gay's discrimination claims to Yudkowsky and Zalduendo's claims by arguing that the "practice of slowly stripping

existing patients away from older doctors over time must be taken as one continuing violation."
Doc. 72 at 9. However, for the continuing violation doctrine to apply to Gay's discrimination
claims, she must identify an act of discrimination within the limitations period specific to her,
rather than rely on acts of discrimination against Yudkowsky and Zalduendo. *See Reed v.
Lawrence Chevrolet, Inc.*, 14 F. App'x 679, 684 (7th Cir. 2001) ("[T]he continuing violation
doctrine does not apply where a time-barred incident cannot be linked with a timely incident, or
where the time-barred incident alone should have triggered the plaintiff's awareness of his
rights."). Instead, Plaintiffs' opposition brief only states that Plaintiffs became aware of the
allegedly discriminatory conduct after they discussed the situation together, which is not specific.
Doc. 72 at 10. The complaint alleges that Defendants constructively discharged Gay on
November 8, 2017; however, Gay testified that she was constructively discharged in May 2017,
and Plaintiffs' opposition brief makes no mention of the constructive discharge claim. Doc. 69-
2, Gay Dep. 178:17–19, 179:6–8. Plaintiffs also do not respond to Defendants' detailed
argument that Gay's constructive discharge claim fails on the merits, even if it was timely. Such
failure to respond results in waiver of the constructive discharge claim. *See Bonte v. U.S. Bank,
N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument—as the [plaintiffs]
have done here—results in waiver."). Accordingly, the continuing violation doctrine is
inapplicable to Gay's claims. *See Benjamin*, 10 F. App'x at 356 (the plaintiff cannot invoke the
continuing violation doctrine because he failed to identify any act of discrimination within the
limitations period); *see also Hall v. Bodine Elec. Co.*, 276 F.3d 345, 354 (7th Cir. 2002)
("Requiring plaintiffs to identify a limitations period violation is necessary to enable courts to
distinguish an ongoing pattern of discrimination from non-actionable situations involving the
persisting effects of past discrimination." (internal quotation marks omitted)), *overruled on other*

*grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013). The Court finds that Gay's claims are time-barred in their entirety.

Alternatively, Yudkowsky and Zalduendo each identify an act within the limitations period, indicating that the continuing violation doctrine could apply. The Seventh Circuit has recognized three general instances in which the continuing violation theory applies. The first type arises when the precise day of the violation is difficult to pinpoint because the employer's decision-making process occurred over a period of time. *Place v. Abbott Labs.*, 215 F.3d 803, 808 (7th Cir. 2000). The second type stems from cases in which the employer has a systematic, openly espoused policy that is allegedly discriminatory. *See id.* The third form of a continuing violation arises when the employer's discriminatory conduct is "so covert" that the discriminatory character is not immediately apparent. *Place*, 215 F.3d at 808.

Here, Plaintiffs discuss the third form of continuing violation, so the Court focuses its analysis accordingly.[2] This theory applies to plaintiffs who only realize "with the benefit of

---

[2] Plaintiffs briefly note that any form of the continuing violation theory applies; however, the first two forms are inapplicable. First, Plaintiffs do not point to any facts suggesting that the relevant decision-making process occurred over a period of time. Second, Plaintiffs have not alleged that there was an openly discriminatory policy of firing members of a certain age group. Indeed, Plaintiffs contend that Defendants never revealed "their plans to hire younger dentists and give them the older dentists' patients." Doc. 72 at 10. If Defendants never revealed their plan, then it cannot be said that there was an openly espoused policy. *See Jones v. Merchants Nat'l Bank & Tr. Co. of Indianapolis*, 42 F.3d 1054, 1058 (7th Cir. 1994) (second type of continuing violation theory did not apply because the plaintiff did not allege that the employer had "an explicit, clearly conveyed policy of discriminating against blacks in promotion decisions"). At most, Plaintiffs assert that Shah told Zalduendo that Dr. Viren Patel admitted he was firing older dentists and hiring younger dentists so DDRN could train them from the beginning and said "out with the old, in with the new." Doc. 71 ¶ 8. However, this statement is inadmissible hearsay. Rather than offer Shah's sworn testimony, Plaintiffs offer only Zalduendo's statement repeating what Shah heard from Patel. *See MMG Fin. Corp. v. Midwest Amusements Park, LLC*, 630 F.3d 651, 656 (7th Cir. 2011) (affirming district court's finding that statement was inadmissible hearsay where the party only offered testimony of its own employees repeating what the declarant told them instead of offering the sworn testimony of the declarant). Plaintiffs also present the fact that Dr. Mathew Caruso overheard Patel admit to Darcy Surinak, Director of Operations at DDRN, that he was firing older dentists and replacing them with newer dentists as soon as possible; this is inadmissible hearsay for the same reason. *See* Doc. 71 ¶ 8. There is no admissible evidence in the record that suggests an openly discriminatory policy.

hindsight" that their employer discriminated against them. *See id.* However, if the plaintiff "knows or with the exercise of reasonable diligence would have known after each act that it was discriminatory and had harmed" her, the theory is inapplicable. *Id.* (quoting *Moskowitz v. Trustees of Purdue Univ.*, 5 F.3d 279, 281–82 (7th Cir. 1993)). *Place* explained that this theory makes the most sense in a sexual harassment case, where the first offensive comment or inappropriate conduct would not have alerted the employee to its harassing quality. *See id.*; *see also Rouse v. Chicago Transit Auth.*, No. 13-CV-5260, 2016 WL 5233591, at *9 (N.D. Ill. Sept. 21, 2016) ("[T]he precedent from this Circuit is not entirely clear concerning the continued applicability [of the continuing violation doctrine] to employment discrimination claims (other than hostile work environment claims).").

Here, Plaintiffs contend that Defendants' actions were covert because they "never revealed to Plaintiffs their plans to hire younger dentists and give them the older dentists' patients." Doc. 72 at 10. It is not completely clear to the Court the frequency at which Defendants reassigned Yudkowsky and Zalduendo's patients to younger dentists. However, the facts indicate that this occurred for about a year prior to their terminations. Defendants argue that the doctrine is inapplicable because the compensation of Plaintiffs involved discrete acts. The Court acknowledges that compensation has been found to constitute a discrete act. *See Hildebrandt v. Ill. Dep't of Nat. Res.*, 347 F.3d 1014, 1028 (7th Cir. 2003) (the plaintiff's paychecks that included discriminatory pay was a "discrete discriminatory act, not subject to the continuing violation doctrine"). However, here, Plaintiffs focus on the reassignment of patients to younger dentists. Although there is perhaps an argument that Plaintiffs should have noticed the reassignments negatively affecting their compensation when their "ability to earn their historical income was cut in half," Doc. 72 at 1, the Court finds that the doctrine may apply here.

Viewing the record in the light most favorable to Plaintiffs, there are facts to suggest that Defendants' transfer of patients from Plaintiffs and assignment of them to younger dentists was so subtle that they did not recognize it as discrimination until their termination. Nonetheless, as discussed further below, even if this doctrine applies, Plaintiffs' claims fail on the merits.

### B.    Merits[3]

Yudkowsky and Zalduendo bring claims for discrimination under the ADEA. Plaintiffs raise two related theories of discrimination. First, Plaintiffs contend that Defendants discriminated against them because DDRN took patients that Plaintiffs normally would have treated and assigned them to younger dentists that Defendants hired after acquiring the practice and thereby reduced Plaintiffs' compensation. Doc. 72 at 1. Second, Plaintiffs allege that Defendants discriminated against them by terminating them.

"The ADEA protects workers 40 years of age and older from age-based employment discrimination." *Wrolstad v. Cuna Mut. Ins. Soc'y*, 911 F.3d 450, 454 (7th Cir. 2018). To prevail on their age discrimination claims, Plaintiffs must show that but for their age, the discrimination would not have occurred; "it's not enough to show that age was *a* motivating factor." *See id.* Therefore, at the summary judgment stage, the inquiry is whether the evidence would permit a reasonable factfinder to conclude that age caused the adverse employment action. *See Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 764 (7th Cir. 2016). There are two methods by which Plaintiffs may carry their burden. First, Plaintiffs may present direct or circumstantial evidence that Defendants took the challenged job actions against them because of their age. *See Wrolstad*, 911 F.3d at 454. Second, Plaintiffs may proceed under the *McDonnell Douglas* burden-shifting framework "by producing evidence that a similarly situated person not in the

---

[3] Because Gay's claims are time-barred, the Court limits any reference to "Plaintiffs" within this section to Yudkowsky and Zalduendo.

protected class was treated more favorably." *Id.* If Plaintiffs carry their burden, the burden shifts to Defendants to identify a legitimate, nondiscriminatory reason for the challenged action. *See id.* The burden then returns to Plaintiffs to show that the stated reason was pretext for discrimination. *See id.* Regardless of the method that Plaintiffs choose, "the basic question at the summary-judgment stage is whether the evidence as a whole would allow a reasonable jury to find that the plaintiff suffered an adverse job action because of his age." *Id.*; *see also Ortiz*, 834 F.3d at 764.

Plaintiffs reference the *McDonnell Douglas* framework, so the Court will first address that method. Under the *McDonnell Douglas* approach, Plaintiffs must show evidence that: (1) they are members of a protected class; (2) they were meeting Defendants' legitimate expectations; (3) they suffered an adverse employment action; and (4) similarly situated employees who were not members of their protected class were treated more favorably. *See McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 368 (7th Cir. 2019). First, Plaintiffs are over the age of forty and are therefore members of the ADEA protected class. Second, Plaintiffs contend that Defendants "had no issue with their performance as dentists" and there was no evidence of poor performance. Doc. 72 at 11. But this is not the relevant inquiry; instead, Plaintiffs must show that they were meeting Defendants' legitimate expectations. Plaintiffs suggest that there is an issue of material fact because Defendants assumed Plaintiffs would be unwilling to adapt to Defendants' changes. However, the evidence indicates that Defendants implemented a revised policy for same-day dentistry procedures that Yudkowsky refused to follow. Indeed, Yudkowsky testified that he continued to conduct the ninety minute new patient consultations that DDRN wanted him to stop. Nonetheless, the Court proceeds to the third and fourth factors.

16

An adverse employment action involves "a materially adverse change in the terms and conditions of employment [that is] more disruptive than a mere inconvenience or an alteration of job responsibilities." *Alamo v. Bliss*, 864 F.3d 541, 552 (7th Cir. 2017) (quoting *Stockett v. Muncie Ind. Transit Sys.*, 221 F.3d 997, 1001 (7th Cir. 2000)).  There are three general categories of adverse employment actions: "(1) termination or reduction in compensation, fringe benefits, or other financial terms of employment; (2) transfers or changes in job duties that cause an employee's skills to atrophy and reduce future career prospects; and (3) unbearable changes in job conditions, such as a hostile work environment or conditions amounting to constructive discharge." *Barton v. Zimmer, Inc.*, 662 F.3d 448, 453–454 (7th Cir. 2011).  Yudkowsky and Zalduendo undoubtedly suffered an adverse employment action when DDRN terminated them. *See, e.g.*, *O'Neal v. City of Chicago*, 392 F.3d 909, 911 (7th Cir. 2004).  Although Plaintiffs do not specifically identify DDRN's alleged transfer of patients and the resulting decrease in compensation as an adverse action, because much of their brief focuses on this action as discriminatory, the Court evaluates whether it qualifies as a materially adverse action.

As discussed, a reduction in compensation is an adverse employment action.  However, Defendants argue that Plaintiffs' compensation was not fixed but instead depended on a formula that included amounts collected from patients.  Defendants further contend that Plaintiffs did not produce any evidence that shows their compensation should have remained constant during any timeframe.  Plaintiffs claim that DDRN took existing patients from them and gave them to younger dentists, resulting in a decreased patient load and loss of income.  Plaintiffs continue to repeat these broad allegations throughout their opposition brief and response to Defendants' motion to bar.  *See* Doc. 72 at 11 ("The older dentists' incomes were immediately adversely affected as a result."); *id.* at 12 ("[T]he evidence indicates that at the time they were fired, DDRN

wished to jettison Zalduendo and Yudkowsky because their younger replacements were already hired and already treating Zalduendo and Yudkowsky's patients."); *id.* at 13 ("DDRN hired new younger dentists; gave them Plaintiffs' patients; and then summarily fired Zalduendo and Yudkowsky."); *see also* Doc. 70 ¶¶ 11, 26 (plaintiffs claim they were "prevented from treating their usual and customary volume of patients" and "suffer[ed] a drastic loss of their opportunity to earn income over time." (emphasis omitted)). However, Plaintiffs point to nothing to demonstrate that they saw fewer patients following the takeover. Nor do they point to anything that demonstrates a reduction in compensation. In fact, Plaintiffs put forth no evidence as to how their patient loads or compensation changed following DDRN's takeover. At this stage, Plaintiffs have the burden of demonstrating that there is a material issue of fact. Plaintiffs have failed to satisfy this burden: they have not pointed to any evidence about their historic patient loads, the change in patient load, or any other facts that would suggest that DDRN "took" patients from them. Accordingly, the Court concludes that Yudkowsky and Zalduendo's terminations are the only actionable adverse actions, as those are the only adverse actions identified by Plaintiffs and of which there is a triable issue of material fact.

Moreover, the final factor dooms Plaintiffs' *prima facie* case because Plaintiffs have failed to identify similarly situated employees. "Although similarly situated employees 'need not be identical in every conceivable way,' they 'must be directly comparable to the plaintiff in all material respects.'" *McDaniel*, 940 F.3d at 368 (quoting *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012)) (internal quotation marks omitted)). "The purpose of the inquiry 'is to eliminate other possible explanatory variables, such as differing roles, performance histories, or decision-making personnel, which helps isolate the critical independent variable—discriminatory animus.'" *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 723 (7th Cir. 2018) (quoting *Coleman*,

18

667 F.3d at 846) (internal quotation marks omitted). Generally, a plaintiff must show that the comparators dealt with the same supervisor, the employer subjected them to the same standards, and the comparators engaged in similar conduct "without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *See McDaniel*, 940 F.3d at 368. Plaintiffs do not identify comparators in their brief. Their repeated references to "all dentists" as being similarly situated does not create a triable issue of material fact that there were comparators. *See* Doc. 72 at 14 ("*[A]ll* of the dentists were performing identical services for patients." (emphasis added)); *id.* ("All of the dentists, new or old, were compensated in the same manner by a formula."); *id.* ("[T]here is no actual salient distinction or difference between the Plaintiffs and their replacements."). And even if the Court looks to the joint statement of undisputed facts, which identifies Grant and Harbron as comparators, there is insufficient information. *But see Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 898 (7th Cir. 2018) (court should not need to "dig through" the statement of facts for comparator evidence). Although the Court assumes that Grant and Harbron had the same supervisor as Plaintiffs and that DDRN subjected them to the same standards, Plaintiffs do not point to anything to raise an issue of fact that the alleged comparators engaged in the same conduct as Plaintiffs or had the same performance reviews. Under the *McDonnell Douglas* framework, Plaintiffs have the burden to make a *prima facie* showing and they have not done so here. *See McDaniel*, 940 F.3d at 369 (affirming summary judgment in part because the plaintiff's conclusory assertion that there was "evidence that he was treated less favorably than similarly situated employees" was insufficient to raise an issue of fact); *Skiba*, 884 F.3d at 723 (plaintiff's comparator argument failed because he did not provide any detail about employees' qualifications or employment history and instead just listed their names and positions); *Johnson*,

892 F.3d at 898 (plaintiffs did not satisfy comparator element where they offered no evidence about who the comparator was and whether she had a similar disciplinary record and performance reviews).

Plaintiffs' claims do not fare better under the *Ortiz* holistic approach.  Under *Ortiz*, the Court assesses "whether the evidence would permit a reasonable factfinder to conclude" that Plaintiffs' age caused their termination.[4]  *Ortiz*, 834 F.3d at 765.  Plaintiffs' termination notices indicate that Chicagoland Smile Group terminated them because it "[undertook] a strategic initiative to rebrand and relaunch Manus Northwestern Oral Health Center."  Doc. 69-16 at 1; Doc. 69-19 at 1.  The record indicates that DDRN implemented new policies, including an expanded schedule for dentists and same-day dentistry procedures.  Both Plaintiffs worked a reduced schedule and testified that they wanted to continue working that schedule at the time of their termination.  Additionally, Yudkowsky continued with the ninety minute new patient consultations that DDRN requested him to stop doing.  Plaintiffs argue that there is a triable issue of material fact because DDRN never asked them whether they would be willing to work a different schedule.  Instead, Defendants contend that they "believed" Plaintiffs would be unwilling to work full-time and consistently implement the same-day dentistry procedures.  Doc. 69 ¶ 30, 36.  However, the Court "do[es] not sit as a superpersonnel department that reexamines an entity's business decision and reviews the propriety of the decision."  *Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000); *cf. id.* ("The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered.").  Here, Defendants' stated reason for Plaintiffs' termination is clear: implementation of new policies.  Defendants' reason for termination was honest; they believed, and the record suggests,

---

[4] Again, the Court restricts its analysis to Plaintiffs' termination because that is the only adverse employment action that Plaintiffs identify with any specificity.

that Plaintiffs would not follow the new policies. Additionally, the record indicates that Plaintiffs did not personally observe anyone make any age-related comments or slurs to them or about them or anyone else during their employment with DDRN. In short, Plaintiffs' belief that they were terminated because of their age is insufficient. *See Davis v. Ford Motor Co.*, 751 F. App'x 949, 951 (7th Cir. 2019) ("[A]n unsubstantiated belief [that defendants discriminated] is insufficient to overcome summary judgment."). After considering all of the evidence, the Court cannot conclude Plaintiffs' age was the but for cause of their termination. Therefore, the Court grants summary judgment to Defendants on Plaintiffs' ADEA discrimination claims.

## II.     Breach of Contract and IWPCA Claims

Gay and Zalduendo bring breach of contract and IWPCA claims against Defendants for failing to compensate them under their employment contracts. Although Yudkowsky did not include any factual allegations suggesting that Defendants failed to give him the contractually-related notice of termination in the complaint, in their opposition brief, Plaintiffs assert that Defendants breached Yudkowsky's contract by terminating him without notice. Yudkowsky cannot amend the complaint to introduce new factual bases for liability at this stage. *See Colbert v. City of Chicago*, 851 F.3d 649, 656 (7th Cir. 2017) ("[A] party may neither amend its pleadings by argument in opposition to summary judgment nor introduce new theories of liability in opposition to summary judgment." (quoting *Whitaker v. Milwaukee Cty.*, 772 F.3d 802, 808 (7th Cir. 2014))). Therefore, the Court only addresses these claims with respect to Gay and Zalduendo and limits any reference to "Plaintiffs" in this section to them.

The IWPCA "provide[s] employees with a cause of action for the timely and complete payment of earned wages or final compensation, without retaliation from employers." *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1050 (7th Cir. 2016) (quoting *Byung Moo Soh v. Target Mktg.*

*Sys., Inc.*, 353 Ill. App. 3d 126, 129 (2004)). The IWPCA defines "wage" narrowly as "compensation owed an employee by an employer pursuant to an employment contract or agreement between the 2 parties." 820 Ill. Comp. Stat. 115/2. Therefore, to establish a claim under the IWPCA, Plaintiffs must show that that Defendants owe them wages pursuant to their employment contracts. *See Enger v. Chicago Carriage Cab Corp.*, 812 F.3d 565, 568 (7th Cir. 2016). Accordingly, Plaintiffs must show a breach of contract under Illinois law. *See Barker v. Quick Test, Inc.*, No. 13 C 4369, 2016 WL 1019708, at *11 (N.D. Ill. Mar. 15, 2016) (citing *Enger*, 812 F.3d at 570).

For a breach of contract claim, a plaintiff must show: "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Hess v. Kanoski & Assocs.*, 668 F.3d 446, 452 (7th Cir. 2012). Here, Defendants dispute the third and fourth elements. Defendants contend that Plaintiffs have produced no evidence that Defendants failed to properly compensate them. Further, Defendants argue that there is no evidence that Plaintiffs suffered damages and Plaintiffs cannot prove damages to a reasonable degree of certainty. The latter argument is also the focus of Defendants' motion to bar, so the Court concentrates on that here. In addition to establishing that they sustained damages, Plaintiffs must "establish a reasonable basis for computation of those damages." *TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 632 (7th Cir. 2007) (citation omitted); *Assaf v. Trinity Med. Ctr.*, 821 F.3d 847, 848 (7th Cir. 2016). Moreover, "[t]he party claiming damage bears the burden of proving those damages to a reasonable degree of certainty." *TAS*, 491 F.3d at 632; *see also Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 518 (7th Cir. 2011); *Dowd & Dowd, Ltd. v. Gleason*, 352 Ill. App. 3d 365, 383 (2004) ("A

22

plaintiff must prove damages to a reasonable degree of certainty, and evidence cannot be remote, speculative, or uncertain.").

Plaintiffs set forth their damages as follows. Gay seeks damages amounting to $516,000 and lists amounts in the following categories: lost wages in 2017 and 2018, interest on loan, liquidated damages, and attorneys' fees. Zalduendo seeks damages amounting to $193,962.08 and includes the same listed categories, as well as unpaid wages and interest for unpaid wages. However, absent from these lists are any calculations as to how Plaintiffs arrived at these amounts. Zalduendo does not specify the amount of wages that Defendants refused to pay. Gay does not indicate the specific dates of lost wages, which she should be able to provide because she seeks payment of monthly wages that she earned. Notably, the record indicates that Gay and Zalduendo's compensation was based on variables that included the number of patients each dentist saw and the associated lab costs of services. Without more information about these factors before and after Defendants' takeover or any detailed computation as to lost wages, Plaintiffs' damages calculations are merely speculative.[5] Plaintiffs also claim that Defendants refused to pay them compensation that they earned. *See* Doc. 15 ¶¶ 51, 90, 94. But they do not specify the dates they provided services, services rendered, or the amounts that Defendants allegedly refused to pay. Additionally, Zalduendo testified that she was compensated appropriately during her employment and limited the scope of her claims to the period following her termination, *see* Doc. 69 ¶ 72, but the calculations do not include any details about this. Accordingly, Plaintiffs have failed to provide any reasonable basis for the computation of their damages and the Court grants summary judgment to Defendants on Plaintiffs' breach of contract

---

[5] Plaintiffs' opposition brief focuses on the claim that Zalduendo is "entitled to collect compensation for collected billings for a period of 60 days following the termination date." Doc. 72 at 15.

and IWPCA claims.[6] *See Barker*, 2016 WL 1019708, at *12 (granting summary judgment because the plaintiff's failure to specify the date, number, or amount of commissions that the defendant allegedly refused to pay would not permit a reasonable jury to find that the plaintiff provided a reasonable basis for computation of damages); *cf. Merry Gentleman, LLC v. George & Leona Prods., Inc.*, 799 F.3d 827, 828, 832 (7th Cir. 2015) (affirming summary judgment for the defendant because the plaintiff failed to present a genuine issue of fact on damages theory and explaining that reasonable trier of fact could not conclude that the plaintiff sustained $5.5 million in damages); *DiPerna v. Chicago Sch. of Prof'l Psych.*, 893 F.3d 1001, 1006 n.6 (7th Cir. 2018) ("Damages are an essential element of a breach of contract action and a claimant's failure to prove damages entitles the defendant to judgment as a matter of law." (quoting *In re Ill. Bell Tel. Link-Up II*, 2013 IL App (1st) 113349, ¶ 19)).

 The Court's conclusion is reinforced by the fact that this Court previously ordered Plaintiffs to provide all outstanding discovery responses. This included all "[a]mounts, explanations, calculations—and supporting documents, if any—for the alleged damages for each Plaintiff's unpaid wage and breach of contract claims." Doc. 52 at 2. Following that order, on March 9, Plaintiffs represented to Defendants that Zalduendo was seeking lost income prior to termination for a reduction in patients, as reflected in his tax returns and W2s. Doc. 63-12 at 2. The email did not detail any amounts, explanations, or calculations. Plaintiffs now argue that their mandatory initial discovery disclosures include damages calculations; however, those do

---

[6] Additionally, Plaintiffs' opposition brief does not even address Gay's damages theory, so Plaintiffs waived any argument that the Court should not grant summary judgment on her breach of contract and IWPCA claims. *See Domka v. Portage Cty., Wis.*, 523 F.3d 776, 783 (7th Cir. 2008) ("It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered."); *Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 407 (7th Cir. 2007), *aff'd*, 553 U.S. 442 (2008) (the plaintiff forfeited discrimination claim "by devoting only a skeletal argument in response" to the defendant's motion for summary judgment).

not include the information that this Court previously instructed Plaintiffs to provide. The cases that Plaintiffs cite to support their argument that the initial disclosure provides sufficient information about damages are not persuasive. *Jabat v. Smith* involved a challenge to the damages award following trial and whether the evidence supported that award; that is not the inquiry here. 201 F.3d 852, 857 (7th Cir. 2000). And *Trustmark Insurance v. General and Cologne Life Re of America* involved the testimony of a damages and actuarial sciences expert, as well as an actuarial model to calculate future damages. 424 F.3d 542, 552 (7th Cir. 2005).

Overall, Plaintiffs have provided no reasonable basis for the computation of damages, as the case law and this Court's order required. *See Dunkin' Donuts Inc. v. N.A.S.T., Inc.*, 428 F. Supp. 2d 761, 772 (N.D. Ill. 2005) (granting judgment as a matter of law for the defendants because the plaintiff was unwilling and unable to present competent and admissible evidence of damages despite repeated demands to do so); *see also Mission Measurement Corp. v. Blackbaud, Inc.*, No. 16 C 6003, 2019 WL 4958236, at *3 (N.D. Ill. Oct. 8, 2019) (the court would dismiss any alleged damages under Rule 37 because the plaintiff failed to disclose damages calculations and did not show that its failure was harmless). The Court grants summary judgment for Defendants on Zalduendo and Gay's breach of contract and IWPCA claims.

## III. Accounting

Finally, Defendants move for summary judgment on Gay and Zalduendo's accounting claims. Defendants argue that the accounting claims fail because they are based entirely on alleged contracts and, if there was a breach, Plaintiffs would have an adequate remedy at law. To prove a claim for an accounting, a plaintiff must establish that there is no adequate remedy at law, as well as one of the following: "(1) a breach of a fiduciary relationship, (2) a need for discovery, (3) fraud, or (4) the existence of mutual accounts which are of a complex nature."

25

*Kempner Mobile Elecs., Inc. v. Sw. Bell Mobile Sys.*, 428 F.3d 706, 715 (7th Cir. 2005) (citing *Mann v. Kemper Fin. Cos.*, 247 Ill. App. 3d 966 (1992)).

Plaintiffs do not respond to Defendants' motion for summary judgment on these claims.[7] Further, neither Gay nor Zalduendo provided facts to suggest that they are without an adequate legal remedy. *See Triple Canopy, Inc. v. Moore*, No. 04 C 3265, 2005 WL 1629768, at *5 (N.D. Ill. July 1, 2005) ("[T]o survive summary judgment, the Plaintiffs will need to show that the legal remedy of a jury damages award is not a reasonable one before an equitable accounting would be necessary."). Moreover, Defendants' motion suggests that discovery has occurred on these claims, and Plaintiffs do not argue that discovery was inadequate. *See Kozyrkov v. Aculocity, LLC*, No. 16 C 6961, 2017 WL 528385, at *7 (N.D. Ill. Feb. 9, 2017) (dismissing accounting claim because discovery would reveal all of the accounting information pertinent to the breach of contract claim); *Gerace v. Andrews*, 227 F. Supp. 3d 946, 953 (N.D. Ill. 2016) (if plaintiff could obtain the information she sought through discovery, equitable accounting claim would fail). Because Gay and Zalduendo have failed to establish a genuine issue of material fact as to the elements of an accounting under Illinois law, the Court grants summary judgment for Defendants. *See Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014) ("[S]ummary judgment is proper against 'a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.'" (citing *Celotex*, 477 U.S. at 322)).

---

[7] Plaintiffs' opposition brief only includes the following statement with respect to the accounting claims: "Plaintiffs are seeking an accounting of all post-termination collections for work [Yudkowsky] performed." Doc. 72 at 15. However, similar to the breach of contract and IWPCA claims, the complaint does not indicate that Yudkowsky seeks an accounting. As discussed, Yudkowsky cannot assert such a claim at this stage.

**CONCLUSION**

For the foregoing reasons, the Court grants Defendants' motion for summary judgment [67] and enters judgment for Defendants on Plaintiffs' complaint. The Court denies Defendants' motion to bar [63] as moot. Civil case terminated.

Dated: December 3, 2020

SARA L. ELLIS
United States District Judge